## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CHARLES JEFFERSON**                                              **PLAINTIFF**

**V.**                                  **CIVIL ACTION NO.:**   3:18-cv-565-DPJ-FKB

**SANDERSON FARMS, INC.**                                       **DEFENDANT**

---

### COMPLAINT
### JURY TRIAL DEMANDED

---

**COMES NOW** the Plaintiff, Charles Jefferson, by and through his counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights under the Family and Medical Leave Act of 1993, as amended, against the Defendant, Sanderson Farms, Inc. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### PARTIES

1.      Plaintiff, Charles Jefferson, is an adult African American male residing in Pike County, Mississippi.

2.      Defendant, Sanderson Farms, Inc., may be served with process by serving Joe F. Sanderson, Jr. 127 Flynt Road, Laurel, Mississippi 39443.

### JURISDICTION AND VENUE

3.      This court has federal question jurisdiction for a cause of action arising under the Family and Medical Leave Act of 1993, as amended.

4.      This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

## STATEMENT OF THE FACTS

5.     Plaintiff is a 36 year old black male from Pike County.

6.     Plaintiff was hired by Defendant on April 8, 2015, as a frame scale operator and line operator.

7.     Plaintiff's position required him to stand for 8 plus hours during a day.

8.     Also, due to the temperature being kept at 45 degrees, the noise at 82 decibels, and the environment being consistently wet, the employees in Plaintiff's department were given breaks every 2.5 hours. The work was completed through a repetitive motion.

9.     Plaintiff was involved in a rear-end collision on December 3, 2017.

10.    Plaintiff tried to continue to work while enduring the pain he had so that he could maintain his pay and not risk his family's well being.

11.    Plaintiff saw a pain management physician, Dr. Susie Folse, in Hattiesburg, MS, on a regular basis.

12.    On June 4, 2018, Plaintiff was in a lot of pain while at work, so Plaintiff went to see the Defendant' nurse.  The Defendant's nurse told Plaintiff to leave work and go to Southwest Regional Medical Center in McComb, MS.

13.    The physician at the hospital took Plaintiff off work until his follow-up appointment with Dr. Susie Folse, which was on June 11, 2017.

14.    After Plaintiff's appointment with Dr. Folse, Plaintiff was placed on work restrictions.

15.    Dr. Folse restricted Plaintiff to have a break every 2 hours instead of every 2.5 hours for 6 weeks.  At which time, Plaintiff would begin receiving injections in his back.

16.     However, the absentee supervisor, Florence Sanchez, told Plaintiff that he could not come back to work until Plaintiff had an excuse saying "may return to work without any restrictions."

17.     Plaintiff drove back and forth to Hattiesburg for doctor's appointments from June 11, until to June, 15.

18.     On June 13, Ms. Sanchez's, her supervisor Ms. Stephanie, and Plaintiff, tried to reach Dr. Folse by phone from Ms. Stephanie's office; however, they failed to make contact with Dr. Folse.

20.     Plaintiff asked Dr. Folse to remove his restriction so that he could go back to work until he found another job.

21.     Dr. Folse gave Plaintiff an excuse for work; however, on June 13, Ms. Sanchez's supervisor, Ms. Stephanie, told Plaintiff the excuse was "not good enough."

22.     On June 14, Plaintiff was given FMLA papers by the Defendant's first shift absentee attendant.

23.     That very same day, June 14, Dr. Folse's office contacted the Defendant to let them know that Plaintiff's excuse with no restrictions was ready to be picked up.

24.     Around 5:30, Ms. Sanchez contacted Plaintiff to inform him that Dr. Folse had his excuse ready to be picked up.

25.     Plaintiff asked Ms. Sanchez if he needed to give Dr. Folse the FMLA papers and Ms. Sanchez told Plaintiff "yes."   Ms. Stephanie told Plaintiff that Blue Cross Blue Shield is the Defendant's FMLA administrator.

26.     The papers included Plaintiff's Blue Cross Blue Shield papers which had the date

Page 3 of 7

that Plaintiff was terminated, as well as the closing date of the FMLA leave.

27.     Ms. Sanchez also warned Plaintiff that if he missed anymore days with or without a doctor's excuse, Plaintiff would be terminated, unless the days were included in his FMLA paperwork.

28.     Plaintiff turned in his FMLA paperwork to Dr. Folse on June 15, right before he took a paid vacation that was scheduled from June 18, until June 22.

29.     On Plaintiff's paperwork, Dr. Folse included the dates April 12, June 11, June 25, and July 2, and also stated that Plaintiff was unable to work June 11 through June 14.

30.     The paperwork was ready for Plaintiff to pick up from Dr. Folse's office on June 25.

31.     Plaintiff turned in his FMLA paperwork to the Defendant on June 26, which was the day Plaintiff returned from his paid vacation.

32.     Ms. Sanchez read Plaintiff's paperwork, everything looked okay, so Ms. Sanchez allowed Plaintiff to work that day, June 26.

33.     The next day, June 27, Ms. Sanchez called Plaintiff off the line and told Plaintiff that if he wanted to keep his job he needed to go to Stat Care in McComb, MS, and get them to back date an excuse for June, 25.

34.     Her reason was June 25 was not on his FMLA paperwork.

35.     Plaintiff refused to go to Stat Care, because he had never been treated by Stat Care, and the date, June 25, was on Plaintiff's FMLA paperwork two different times.

36.     Without Plaintiff's knowledge, Plaintiff was terminated on June 27.

37.     Also, Plaintiff's insurance was terminated the same day of his termination.

38.     Plaintiff tried to contact Ms. Sanchez, but was not able to reach her.

39.     Plaintiff then called Ms. Stephanie, who informed Plaintiff that June 25, was not on his FMLA paperwork.

40.     Plaintiff asked Ms. Stephanie to please to check again, and Ms. Stephanie responded, "I see the date after all."

41.     Ms. Stephanie then informed Plaintiff that Ms. Sanchez would be giving him a phone call that evening to come into work.

42.     On June 28, Ms. Sanchez contacted Plaintiff and said that her boss, Ms. Stephanie, said there was nothing she could do about Plaintiff's termination.

43.     After multiple calls, Plaintiff finally got through to Ms. Stephanie on Tuesday, July 3.

44.     Ms. Stephanie claimed she could not remember Plaintiff's case and that she needed to look up Plaintiff's paperwork.

45.     Once Ms. Stephanie got Plaintiff's paperwork pulled up, Ms. Stephanie informed Plaintiff that the four dates Plaintiff claimed he provided to the Defendant were not on the paperwork, and Plaintiff was terminated for missing days with or without a doctor's excuse.

46.     Defendant discriminated against Plaintiff and retaliated against Plaintiff based on his FMLA leave and terminated him in violation of the FMLA.

## COUNT ONE: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 (FMLA) AND FMLA RETALIATION

47.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 46 above as if fully incorporated herein.

48.     Defendant terminated Plaintiff in retaliation for qualifying for and/or taking

federally protected leave under the FMLA, 29 U.S.C. §2601 *et seq*. It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. In addition, it is unlawful for any employer to discharge or discriminate against any individual for opposing any practice made unlawful by the FMLA.

49.     Defendant discriminated against Plaintiff and retaliated against him based on his need to utilize FMLA leave and terminated his employment in violation of the FMLA.

50.     As a result of Defendant's intentional, discriminatory and unconstitutional acts described above, Plaintiff has suffered and continues to suffer mental anguish, humiliation, emotional distress, all to his detriment and compensable at law.

51.     The wrongful conduct of Defendant is evidenced by a consciously indifferent attitude towards employees' rights under the FMLA. As a result of this conduct, liquidated damages should be assessed against Defendant so as to deter this type of conduct in the future.

52.     Plaintiff also seeks all other relief, at law or in equity, to which he may show himself justly entitled.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1.     Reinstatement or front pay in lieu of reinstatement;
2.     Back pay;
3.     Liquidated damages;
4.     Punitive damages;
5.     Attorney's fees;
6.     Lost benefits;
7.     Pre-judgment and post-judgment interest;
8.     Costs and expenses; and
9.     Any other relief to which he may be properly entitled.

THIS the __20ᵗʰ__ day of August, 2018.

Respectfully submitted,

CHARLES JEFFERSON, PLAINTIFF

By: _____

Louis H. Watson, Jr.  (MB# 9053)
Nick Norris (MB#101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile:   (601) 968-0010
Email: louis@watsonnorris.com
          nick@watsonnorris.com